# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DEBRA J. WEBB,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:02cv00144 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Debra J. Webb, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Webb previously filed applications for DIB and SSI[1] on or about July 10, 1996, alleging disability as of February 1, 1996, based on right hip and leg discomfort and back pain. (Record, ("R."), 167-70, 178, 186.) Webb's claims were denied both initially and on reconsideration. (R. at 87-88, 89, 91-93.) Webb requested a hearing before an administrative law judge, ("ALJ"), (R. at 94.) By decision dated December 1, 1997, the ALJ denied Webb's claims. (R. at 101-09.) Webb filed a request for review of the ALJ's decision, (R. at 115), and on January 20, 1999, the Appeals Council granted her request, vacated the hearing decision and remanded the case to the ALJ. (R. at 121-23.) After holding a new hearing on March 1, 2000, the ALJ again denied Webb's claims. (R. at 36-47.) Webb requested a review of the ALJ's decision, and the Appeals Council denied her request for review. (R. at 136, 148-51.) Webb then filed a complaint with this court seeking review of the ALJ's unfavorable decision. Because the tape of the second administrative hearing was blank and a transcript could not be prepared, the court remanded this case to the ALJ pursuant to sentence six of 42 U.S.C. § 405(g). (R. at 86, 156-57.) The ALJ held his

---

[1]The record does not contain an application for SSI. However, the ALJ's decision refers to an SSI application. (R. at 24.)

most recent hearing on June 3, 2003, at which Webb was represented by counsel. (R. at 48-81.)

By decision dated August 19, 2003, the ALJ again denied Webb's claims. (R. at 24-33.) The ALJ found that Webb met the disability insured requirements of the Act for DIB purposes through June 30, 2002.[2] (R. at 32.) He further found that Webb had not performed substantial gainful activity since her alleged onset of disability. (R. at 32.) The ALJ found that the medical evidence established that Webb had severe impairments, namely degenerative disc disease of the lumbosacral spine and degenerative osteoarthritis of the hips, but he found that Webb did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 32.) The ALJ further found that Webb's allegations regarding her limitations were not totally credible. (R. at 32.) The ALJ concluded that Webb retained the residual functional capacity to perform sedentary work[3] that allowed a sit/stand option. (R. at 32.) Based on Webb's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Webb could perform, including those of an office clerk and a teacher's aide. (R. at 32-33.) Therefore, the ALJ found that Webb was not disabled as defined by the Act and was not eligible for benefits. (R. at 33.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

---

[2]Thus, for purposes of determining DIB eligibility, Webb must show disability on or before June 30, 2002.

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2005).

Case 1:02-cv-00144-PMS   Document 16   Filed 09/02/05   Page 3 of 16   Pageid#: 78

After the ALJ issued this decision, Webb pursued her administrative appeals, (R. at 20), but the Appeals Council denied her request for review. (R. at 6-8.) Webb then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The case is before this court on Webb's motion for summary judgment filed February 11, 2005, and the Commissioner's motion for summary judgment filed March 10, 2005.

## *II. Facts*

Webb was born in 1958, (R. at 167), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Webb completed high school and has past relevant work experience as a data entry clerk and a substitute teacher. (R. at 52, 54.) She stated that she worked from her home from March 1999 through August 2001 as a data entry clerk. (R. at 52.) She testified that she worked as a substitute teacher and was currently doing so two to three days per month. (R. at 54-55.)

Vocational expert, James Williams, testified at Webb's hearing. (R. at 71-80.) He was asked to assume an individual of Webb's age, education and work experience, who had the residual functional capacity to perform unskilled sedentary work and who would require a sit/stand option. (R. at 76.) Williams stated that there would be jobs available in significant numbers in the national economy that such an individual could perform, including jobs as an office clerk and a teacher's aide. (R. at 76.) Williams was asked to consider an individual who would be limited as indicated in the assessment of Dr. Paul Morin, M.D., dated May 21, 2003. (R. at 76, 313-16.) Williams stated that such an individual would be unable to perform the requirements

of sedentary work. (R. at 79.) He also stated that such an individual would be unable to perform the requirements of sedentary work if she were limited as set out in the assessment of L. Andrew Steward, Ph.D. (R. at 79, 310-11.)

In rendering his decision, the ALJ reviewed records from Bedford County Public Schools; Dr. Paul Morin, M.D.; Dr. Paul C. Liebrecht, M.D.; Dr. Donald R. Williams, M.D., a state agency physician; Dr. Daniel C. Worrell, M.D.; Dr. Henry Gonzales, M.D., a gynecologist; Dr. David L. Kelly Jr., M.D.; Dr. Carlo Yuson, M.D.; Dr. Ira B. Wile, M.D., a medical expert; and L. Andrew Steward, Ph.D., a licensed clinical psychologist. Webb's attorney also submitted medical reports from North Carolina Baptist Hospital to the Appeals Council.[4]

On April 3, 1996, Webb saw Dr. Daniel C. Worrell, M.D., for complaints of right leg and thigh pain. (R. at 213.) Straight leg raising tests were negative, range of motion of both hips was full, patella and plantar reflexes were 2+ and symmetrical and standing and heel toe walking were normal. (R. at 213.) He reported that the examination was unremarkable and recommended taking a watchful waiting approach to Webb's condition. (R. at 213.)

On April 11, 1996, Webb saw Dr. Paul C. Liebrecht, M.D., for a pre-employment evaluation. (R. at 214.) She complained of right hip and thigh pain. (R. at 214.) Dr. Liebrecht reported that Webb had full range of motion of her lumbar spine with no neurological deficit in her lower extremities. (R. at 214.) Range of motion was

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

limited in her right hip, but there was no evidence of tenderness and she did not limp. (R. at 214.) X-rays of Webb's right hip showed mild degenerative changes with little narrowing of the joint space. (R. at 214.) Dr. Liebrecht opined that Webb had mild-to-moderate degenerative arthritis of the right hip. (R. at 214.)

On May 8, 1996, Webb saw Dr. Paul Morin, M.D., for complaints of right hip pain. (R. at 215.) He noted that, although internal rotation and abduction of Webb's right hip was somewhat limited, she was able to fully flex and extend both hips and displayed no other deficits in her lower extremities. (R. at 215.) Dr. Morin diagnosed early osteoarthritis of the right hip secondary to congenital dysplatic acetabulum and lack of coverage. (R. at 215.) On February 20, 1997, Dr. Morin performed a total right hip arthroplasty. (R. at 247, 283-84.) On March 10, 1997, Webb reported that she was "doing very well." (R. at 244.) Dr. Morin reported that Webb was walking well without evidence of significant pain. (R. at 244.) On March 31, 1997, Webb reported that she was "doing well" with "no complaints" apart from occasional back discomfort that occurred after exercise. (R. at 244.) Dr. Morin reported that Webb was doing very well with range of motion with no apparent discomfort. (R. at 244.) Dr. Morin reported that Webb should increase her activities and think about returning to work in three-to-four weeks. (R. at 244.) On May 12, 1997, Webb reported that she was "doing very well" and was "very active." (R. at 244.) On May 23, 1997, Dr. Morin indicated that Webb could lift items weighing 45 to 70 pounds, ride a bike and push a lawn mower. (R. at 243.) On August 18, 1997, Webb complained of left leg pain. (R. at 227-28.) Range of motion of Webb's back was pain free. (R. at 227.) Dr. Morin diagnosed left sided L5-S1 disc herniation. (R. at 228.) On August 25, 1997, an MRI of Webb's lumbar spine showed a large herniated disc at the L5-S1 level. (R. at 229, 287.) Dr. Morin treated Webb with an epidural injection and pain medication. (R. at

231-32, 239-40.) He was hopeful that the herniation would resolve with time and reported that he saw no immediate need for disc resection. (R. at 240.)

On May 13, 2002, Dr. Morin completed a medical assessment indicating that Webb could occasionally lift and carry items weighing up to 15 pounds and that she could frequently lift and carry items weighing up to five pounds. (R. at 145-47.) He reported that Webb could stand, walk and/or sit for up to three hours in an eight-hour workday and that she could do so for one hour without interruption. (R. at 145-46.) Dr. Morin reported that Webb could occasionally climb, kneel and crouch, frequently balance and never stoop or crawl. (R. at 146.) He also indicated that Webb was restricted from working around heights and moving machinery. (R. at 147.) He placed these limitations on Webb's work-related abilities based on right total hip arthoplasty. (R. at 147.)

On May 20, 2003, Webb underwent an MRI of the lumbar spine, which showed a large herniation at the L5-S1 level. (R. at 317.) It was reported that there were no significant changes from the previous scan dated February 22, 1999. (R. at 317.) On May 21, 2003, Dr. Morin completed another medical assessment indicating that Webb could occasionally lift and carry items weighing up to 20 pounds and that she could frequently lift and carry items weighing less than 10 pounds. (R. at 313-16.) He reported that Webb could stand and/or walk for less than two hours in an eight-hour workday. (R. at 313.) He reported that Webb must periodically alternate sitting and standing. (R. at 314.) He indicated that Webb's ability to push and pull was limited in her lower extremities. (R. at 314.) Dr. Morin reported that Webb could occasionally balance and stoop and never climb, kneel, crouch or crawl. (R. at 314.) He also indicated that Webb was restricted from working around hazards. (R. at 316.)

-7-

On October 24, 1996, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Webb had the residual functional capacity to perform medium work.[5] (R. at 219-26.) He indicated that Webb was limited in her ability to push and pull with her lower extremities on the right. (R. at 220.) He imposed no postural, manipulative, visual, communicative or environmental limitations on Webb's work-related abilities. (R. at 221-23.)

On January 12, 1998,[6] Dr. David L. Kelly Jr., M.D., saw Webb for complaints of back and leg pain. (R. at 230.) During the evaluation, Webb walked with a limp and her lumbar flexion was somewhat limited, but she got "around fairly well" and her back was free of muscle spasm. (R. at 230.) Dr. Kelly reported that Webb was not having enough pain to warrant an operation. (R. at 230.) He recommended aquatic walking. (R. at 230.) On February 12, 1999, Webb complained of back and leg pain. (R. at 261.) She had positive straight leg raises, but no weakness or reflex changes. (R. at 261.) On February 22, 1999, x-rays of Webb's lumbar spine showed a large ruptured disc, and Dr. Kelly reported that the disc should be removed. (R. at 250, 286.) On March 7, 2002, Webb reported that she was doing well and denied any significant pain or discomfort. (R. at 300.) She had good range of motion through her right hip, as well as good flexion and internal and external rotation. (R. at 300.) On March 31, 2003, Webb again reported that she was doing well and denied any

---

[5]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2005).

[6]After seeing Dr. Kelly on January 12, 1998, Webb received no other treatment in 1998 for orthopedic problems. Although she saw Dr. Henry Gonzales, M.D., a gynecologist, on October 26, 1998, for an annual health care visit and complained of low back pain, he did not report clinical findings relative to her back. (R. at 292.) Dr. Gonzales treated Webb for premenstrual dysphoric disorder, which was controlled with medication. (R. at 288.)

significant pain or discomfort. (R. at 296.)

On May 13, 1999, Dr. Carlo Yuson, M.D., evaluated Webb. (R. at 251-53.) Dr. Yuson noted that Webb was able to get up from a chair easily and without any discomfort. (R. at 253.) He reported that Webb had normal strength, coordination, gait, station and reflexes. (R. at 257.) Webb had no consistent sensory loss. (R. at 253.) Physical examination showed no active evidence for lumbar radiculopathy. (R. at 253.) Dr. Yuson completed an assessment indicating that Webb could perform light work.[7] (R. at 254-56.) He also indicated that Webb could occasionally climb, kneel and balance and never crouch, stoop or crawl. (R. at 255.)

On October 5, 1999, Dr. Ira B. Wile, M.D., a medical expert, completed an assessment indicating that Webb had the residual functional capacity to occasionally lift and carry items weighing up 20 pounds and to frequently lift and carry items weighing up to 10 pounds. (R. at 276-78.) He found that she could stand and walk a total of four hours in an eight-hour workday and that he could do so for one hour without interruption. (R. at 276.) Dr. Wile found that Webb could sit for six hours in an eight-hour workday and that she could do so for one hour without interruption. (R. at 277.) He found that Webb should never climb, stoop, kneel, balance, crouch or crawl and that she should not work around heights and moving machinery. (R. at 277-78.)

On May 22, 2003, L. Andrew Steward, Ph.D., a licensed clinical psychologist,

---

[7]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005).

evaluated Webb at the request of Webb's attorney. (R. at 303-09.) Steward diagnosed mild, recurrent major depressive disorder and generalized anxiety disorder. (R. at 308.) Steward indicated that Webb had a then-current Global Assessment of Functioning, ("GAF"), score of 51.[8] (R. at 309.) Steward reported that Webb was permanently and totally disabled. (R. at 309.) He completed a mental assessment indicating that Webb had mild limitations in her ability to understand, remember and carry out simple instructions. (R. at 310-11.) Steward indicated that Webb was moderately limited in her ability to understand, remember and carry out detailed instructions, to use judgment, to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting. (R. at 310-11.) He also indicated that Webb was seriously limited in her ability to interact appropriately with the public, to interact appropriately with supervisors and to respond appropriately to work pressures. (R. at 311.)

On February 2, 2004, Webb was admitted to the North Carolina Baptist Hospital for osteoarthritis of the left hip. (R. at 319-20, 323-30.) She underwent a left total hip arthroplasty. (R. at 319.) She was discharged on February 4, 2004, in stable condition. (R. at 319.) It was indicated that Webb should avoid bending, stooping, lifting, driving, moving heavy furniture or engaging in strenuous activity. (R. at 319.)

*III. Analysis*

---

[8]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

By decision dated August 19, 2003, the ALJ denied Webb's claims. (R. at 24-33.) The ALJ found that the medical evidence established that Webb had severe impairments, namely degenerative disc disease of the lumbosacral spine and degenerative osteoarthritis of the hips, but he found that Webb did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 32.) The ALJ concluded that Webb retained the residual functional capacity to perform sedentary work that allowed a sit/stand option. (R. at 32.) Based on Webb's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Webb could perform, including those of an office clerk and a teacher's aide. (R. at 32-33.) Therefore, the ALJ found that Webb was not disabled as defined by the Act and was not eligible for benefits. (R. at 33.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

In her brief, Webb argues that the ALJ failed to give controlling weight to her

treating physician, Dr. Morin. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 8-11.) Webb also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 12-14.) Webb further argues that the ALJ erred by failing to find that her condition did not meet or equal the listed impairment for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. (Plaintiff's Brief at 14-16.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

-12-

Based on my review of the evidence, I find that substantial evidence exists in this record to support the ALJ's finding that Webb's condition did not meet or equal the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2005). Also, the regulations specifically state that the responsibility for determining whether a claimant's condition meets or equals a listed impairment rests with the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2005).

On March 31, 1997, Webb reported that she was "doing well" with "no complaints" apart from occasional back discomfort that occurred after exercise. (R. at 244.) Dr. Morin reported that Webb was doing very well with range of motion with no apparent discomfort. (R. at 244.) Dr. Morin reported that Webb should increase her activities and think about returning to work in three-to-four weeks. (R. at 244.) On May 12, 1997, Webb reported that she was "doing very well" and was "very active." (R. at 244.) On May 23, 1997, Dr. Morin indicated that Webb could lift items weighing 45 to 70 pounds, ride a bike and push a lawn mower. (R. at 243.) Although an MRI of Webb's lumbar spine performed in August 1997 showed a large herniated disc at the L5-S1 level, Dr. Morin was hopeful that the herniation would resolve with time. (R. at 229, 240.) In May 1999, Dr. Yuson reported that Webb was able to get up from a chair easily and without any discomfort. (R. at 253.) He reported that Webb

had normal strength, coordination, gait, station and reflexes. (R. at 257.) Physical examination showed no active evidence for lumbar radiculopathy. (R. at 253.) On March 7, 2002, Webb reported that she was doing well and denied any significant pain or discomfort. (R. at 300.) In March 2003, she again reported that she was doing well and denied any significant pain and discomfort. (R. at 296.) Based on the above, I find that substantial evidence exists in the record to support the ALJ's finding that Webb's condition did not meet or equal § 1.04(A).

I also find that substantial evidence exists in the record to support the ALJ's finding that Webb's condition did not meet or equal § 1.04(C). Section 1.04(C) refers to lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00(B)(2)(b), 1.04(C) (2005). There is no evidence in the record that Webb experienced chronic weakness and that this resulted in an inability to walk effectively.

Webb also argues that the ALJ erred by finding that she did not suffer from a severe mental impairment. (Plaintiff's Brief at 12-14.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routing work setting. *See* 20 C.F.R. §§

404.1521(b), 416.921(b) (2005). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding with regard to Webb's mental residual functional capacity. While psychologist Steward found Webb to be permanently disabled, the ALJ gave little weight to his assessment because it was not supported by clinical findings and because it was inconsistent with the objective evidence and conclusions provided by the treating physicians. (R. at 30.) The only other indication in the record that Webb suffered from depression or anxiety is found in the records of her gynecologist, Dr. Gonzales. (R. at 288-94.) However, Dr. Gonzales indicated that Webb's symptoms were controlled with medication. (R. at 288.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Therefore, I find that substantial evidence exists to support the ALJ's finding that Webb did not suffer from a severe mental impairment.

Webb also argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. Morin, her treating physician. (Plaintiff's Brief at 8-11.) Under 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. Based on my review of the record, I find that the ALJ's findings as to Webb's residual functional capacity is consistent with Dr. Morin's May 21, 2003, assessment.

(R. at 313-16.) Therefore, I reject this argument.

Based on the above, I find that substantial evidence exists to support the ALJ's finding that Webb had the residual functional capacity to perform sedentary work. Therefore, I find that substantial evidence supports the ALJ's finding that Webb was not disabled.

## *IV. Conclusion*

For the foregoing reasons, Webb's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the Commissioner's decision to deny benefits will be affirmed.

An appropriate order will be entered.

DATED:   This 2nd day of September, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE